UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
YIRA R.,

                              Plaintiff,          <u>DECISION AND ORDER</u>
                                                  1:25-CV-01313-GRJ

            v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

      In November of 2020, Plaintiff Yira R.[1] applied for Disability Insurance

Benefits under the Social Security Act. The Commissioner of Social

Security denied the application.  Plaintiff, represented by Ny Disability, LLC,

Daniel Beger, Esq., of counsel, commenced this action seeking judicial

review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g)

and 1383 (c)(3).  The parties consented to the jurisdiction of a United

States Magistrate Judge. (Docket No. 9).

      This case was referred to the undersigned on August 27, 2025.

Presently pending is Plaintiff's Motion for Judgment on the Pleadings

pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil
Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court
Administration and Case Management of the Judicial Conference of the United States.

No. 18). For the following reasons, Plaintiff's motion is due to be granted, and this case is remanded for further administrative proceedings.

## I. BACKGROUND

### A.    *Administrative Proceedings*

Plaintiff applied for benefits on November 12, 2020, alleging disability beginning November 1, 2018. (T at 97, 2112).[2]  Plaintiff's application was denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on July 6, 2022, before ALJ John Carlton. (T at 42-76). On August 9, 2022, ALJ Carlton issued a decision denying the application for benefits. (T at 17-41).  The Appeals Council denied Plaintiff's request for review on May 10, 2023. (T at 1-8).  Plaintiff commenced an action in this Court seeking judicial review.  On September 28, 2023, the Honorable Kenneth M. Karas, United States District Judge, approved a Stipulation and Order remanding the case for further administrative proceedings. (T at 2152-53).

A further administrative hearing was held before ALJ Carlton on June 25, 2024. (T at 2082-2105).  Plaintiff appeared with an attorney and testified with the assistance of an interpreter. (T at 2088-98). The ALJ also

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 10.

received testimony from Yaakov Taitz, a vocational expert. (T at 2099-2104).

B.    *ALJ's Decision*

On October 25, 2024, the ALJ issued a second decision denying the application for benefits. (T at 2048-2081).  The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2024 (the date last insured) and did not engage in substantial gainful activity between November 1, 2018 (the alleged onset date) and the date last insured. (T at 2057).

The ALJ concluded that, as of the date last insured, Plaintiff's degenerative disc disease of the lumbar spine, left shoulder derangement post arthroscopic repair, degenerative joint disease of the bilateral knees and hands, carpal tunnel syndrome, tension headaches, vertigo, obesity, and major depressive disorder were severe impairments as defined under the Act. (T at 2057).

However, the ALJ found that, as of the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 2058).

At step four of the sequential analysis the ALJ determined that, as of the date last insured, Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: she cannot climb ladders, ropes, or scaffolds; can only occasionally climb ramps and stairs; occasionally balance, stoop, crouch, crawl, or kneel; frequently reach, handle, finger, or feel bilaterally; occasionally reach overhead bilaterally, and may not work at unprotected heights or around dangerous machinery. (T at 2061).

In addition, the ALJ found that, as of the date last insured, Plaintiff was limited to simple and routine work, not done at a production rate pace, involving no more than occasional interaction with supervisors or coworkers, and with no more than brief superficial interactions with the general public, with such interactions not being a part of her general job duties. (T at 2061).

The ALJ noted that Plaintiff had no past relevant work. (T at 2072).

However, considering Plaintiff's age (50 on the date last insured), education (at least high school), work experience (no past relevant work), and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could have performed as of the date last insured.  (T at 2072).

4

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between November 1, 2018 (the alleged onset date) and June 30, 2024 (the date last insured). (T at 2073).

The ALJ's second decision is considered the Commissioner's final decision. *See* 20 CFR § 404.984.

### C.    Procedural History

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on February 13, 2025. (Docket No. 1).  On July 24, 2025, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket Nos. 18, 19).  The Commissioner interposed a brief in opposition to the motion and in support of a request for judgment on the pleadings, on September 22, 2025. (Docket No. 20).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the

Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec*., 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. *See Green-Younger v.*

*Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether the claimant can perform work that exists in significant

numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101,

103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ's decision cannot be sustained

because the ALJ failed to develop the record adequately regarding her

mental and physical functioning.  The Court will address each dimension in

turn.

### A. Mental Functioning

The record contains numerous assessments of Plaintiff's mental

functioning.  Every mental health professional who examined Plaintiff

assessed some degree of limitation in Plaintiff's ability to meet the mental demands of basic work activity.

Dr. Howard Tedoff conducted a consultative psychiatric examination in January of 2019.  Dr. Tedoff believed Plaintiff's work-related limitations were primarily related to her physical impairments but noted that her ability to sustain an ordinary routine and regular attendance at work "would seem to be a marked issue." (T at 2023).  Dr. Tedoff characterized Plaintiff's prognosis for "being able to return to the workplace in the near future" as "guarded." (T at 2023).

Dr. Joshua Goldstein performed a consultative psychiatric evaluation in December of 2019.  He diagnosed unspecified depressive disorder and unspecified anxiety disorder. (T at 2030).  Dr. Goldstein opined that Plaintiff had mild limitation in most domains of mental functioning, with moderate impairment as to understanding, remembering, and carrying out complex directions and instructions and moderate limitation in regulating emotions, controlling behavior, and maintaining well-being. (T at 2029-30).

Dr. Goldstein performed another consultative psychiatric evaluation in July of 2020.  He made the same diagnoses but now found moderate impairment in Plaintiff's ability to understand, remember, and apply simple

directions and instructions, with no limitation in her capacity to regulate emotions, control behavior, and maintain well-being. (T at 2046).

Dr. Goldstein performed a third evaluation in January of 2021. He diagnosed adjustment disorder with depressed and anxious mood. (T at 898). Dr. Goldstein assessed no more than mild limitation in any domain of mental functioning. (T at 897-98).

Dr. Kelly Thomas performed a consultative psychiatric examination in March of 2024. She diagnosed moderate major depressive disorder, recurrent episodes. (T at 2586). Dr. Thomas opined that Plaintiff had mild to moderate limitation in her ability to understand, remember, or apply simple directions and instructions; mild to moderate limitation using reason and judgment to make work-related decisions; moderate impairment interacting with others, sustaining concentration, and maintaining pace; mild limitation sustaining an ordinary routine and regular attendance; moderate impairment regulating emotions, controlling behavior, and maintaining well-being, and mild to moderate limitation in maintaining personal hygiene and appropriate attire. (T at 2586).

The record also contains several assessments from non-examining State Agency review physicians. In January of 2019, Dr. S. Bhutwala

opined that Plaintiff did not have any severe mental impairments. (T at 125).

In October of 2020, Dr. T. Inman assessed moderate impairment in Plaintiff's ability to: concentrate, persist, or maintain pace; adapt or manage herself; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at pace without an unreasonable number and length of rest periods; and respond appropriately to changes in the work-setting. (T at 147-53).

In February of 2021, Dr. Bhutwala opined that Plaintiff had moderate limitation with respect to her ability to: concentrate, persist, or maintain pace; adapt or manage herself; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work-setting; and set realistic goals or make plans independently of others. (T at 82-93).

In March of 2021, Dr. M. Jurija PhD, affirmed Dr. Bhutwala's February

2021 findings and added that Plaintiff would have moderate limitations in her ability to understand, remember, or apply information. (T at 104-115).

The ALJ did not find any of the medical opinions fully persuasive. (T at 2068-72).  The ALJ reconciled the varying opinions, made his own lay assessment of the treatment record and Plaintiff's activities of daily living, and concluded that Plaintiff retained the RFC to meet the mental demands of a very limited range of work. (T at 2061).

The Court finds that the ALJ erred by making this determination without a functional assessment from Plaintiff's treating psychiatrist.

Social Security proceedings are non-adversarial and the ALJ is obliged "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) (citation omitted). This obligation applies even if the claimant is represented by counsel. *See, e.g., Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)(citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).

The ALJ's duty to develop the record has been described as a "bedrock principle of Social Security law." *Batista v. Barnhart*, 326 F.Supp.2d 345, 353 (E.D.N.Y.2004)(citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir.1999)).

Further, "an ALJ has a heightened duty to develop the record when a claimant asserts a mental impairment." *Gabrielsen v. Colvin,* No. 12-CV-5694 KMK PED, 2015 WL 4597548, at *4-5 (S.D.N.Y. July 30, 2015)(collecting cases).

"This 'heightened duty' derives from the fact that a claimant's mental illness may greatly impede an evaluator's assessment of a claimant's ability to function in the workplace, thus necessitating a more thorough review." *Piscope v. Colvin*, 201 F. Supp. 3d 456, 462-63 (S.D.N.Y. 2016).

Here, Dr. Louis Gonzalez was identified as Plaintiff's treating psychiatrist (T at 2009, 2026-31, 2043-47, 2582-90); Plaintiff testified that Dr. Gonzalez "is … the one who knows [her] condition best …." (T at 58).

The record contains a form completed by Dr. Gonzalez in June of 2022, in which he noted a diagnosis of depressive disorder (major, severe, recurrent) and recommended that Plaintiff be excused from jury duty because her "anxiety does not allow her to be in big crowds and/or closed doors." (T at 2009).

The ALJ was aware of this document, finding it "persuasive" because it was "supported by [Dr. Gonzalez's] treating relationship" with Plaintiff. (T at 2068).  This did not, however, satisfy the ALJ's duty to develop the

record and the ALJ erred by failing to ask Dr. Gonzalez for a full functional assessment.

Underpinning the heightening of the ALJ's duty to develop the record is a recognition that the opinions of treating mental health providers are particularly probative.  *See Flynn v. Comm'r of SSA*, 729 F. App'x 119, 122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations."); *see also Marinez v. Comm'r of Soc. Sec.,* 269 F. Supp. 3d 207, 216 (S.D.N.Y. 2017) (noting that treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.") (citing 20 C.F.R. § 416.927(c)(2)).

Although the Commissioner no longer applies the "treating physician's rule," the duty to develop the record, which includes re-contacting treating physicians when needed to afford the claimant a full and fair hearing based on an adequately developed record, applies to claims

governed by the new medical opinion regulations. *See, e.g., Snoke v. Comm'r of Soc. Sec*., No. 22-CV-3708 (AMD), 2024 WL 1072184, at *9 (E.D.N.Y. Mar. 12, 2024); *Fintz v. Kijakazi*, No. 22-CV-00337(KAM), 2023 WL 2974132, at *7 (E.D.N.Y. Apr. 15, 2023); *Cheryl W. v. Kijakazi*, No. 3:22-CV-1476 (VAB), 2024 WL 1012923, at *5 (D. Conn. Mar. 8, 2024); *Daniela B. v. Kijakazi*, 675 F. Supp. 3d 305, 316 (E.D.N.Y. 2023); *see also Ramos v. Comm'r of Soc. Sec*., No. 20-CV-9436 (OTW), 2023 WL 3380660, at *2 (S.D.N.Y. May 11, 2023).

In this case, the need for further development of the record was especially obvious.  The issue is not *whether* Plaintiff's ability to meet the mental demands of basic work activity is limited by her impairments, but to what *extent*.  Here, the ALJ found Plaintiff limited to a *significantly* reduced range of work (*i.e.*, simple and routine work; no production rate pace; no more than occasional interaction with supervisors or coworkers; no more than brief superficial interactions with the public). (T at 2061).

The ALJ erred by making so precise an assessment of such a severe level of impairment without seeking the views of the mental health professional best suited to offer an opinion.

The Commissioner defends the ALJ's decision by citing the sheer number of functional assessments in the record.  This argument fails for three reasons.

None of the assessments were from treating providers.  The examining and reviewing physicians reached conflicting conclusions as to the nature and extent of Plaintiff's limitations.  The ALJ did not find *any* of the assessments fully persuasive.

Under these circumstances, the need for the treating psychiatrist's views should have been obvious.  *See Piscope*, 201 F. Supp. 3d at 464 ("Given the conflicts in the medical evidence, and in light of the ALJ's decision to grant none of the medical opinions full weight, the record calls for enhancement through inquiries to the treating physicians or consultants that might shed light on the import of their opinions and the conflicts the ALJ identified."); *see also Skartados v. Comm'r of Soc. Sec.*, No. 20-CV-3909 (PKC), 2022 WL 409701, at *4 (E.D.N.Y. Feb. 10, 2022)(noting that "an ALJ must attempt to obtain medical opinions—not just medical records—from a claimant's treating physicians")(citing *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10–11 (S.D.N.Y. Aug. 6, 2021) (collecting cases)).

The Commissioner also defends the ALJ's decision by noting that the ALJ asked Plaintiff's counsel during the second administrative hearing whether there was "anything you're aware [of] that's still missing ….?"; with counsel responding in the negative and stating that he had no objection to the exhibits in evidence. (T at 2086-87).  Counsel never identified the lack of a functional assessment from Dr. Gonzalez and did not ask for additional time and/or the ALJ's assistance in obtaining such an assessment.

The Court recognizes that the Second Circuit, in panel opinions, has held that an ALJ may, in certain circumstances, rely on counsel's certification that the record is complete. *See, e.g., Jordan v. Comm'r*, 142 F. App'x 542, 543 (2d Cir. 2005); *Frye v. Astrue*, 485 Fed. App'x 484, 488 n.2 (2d Cir. 2012).

However, "it has stopped short of holding that the ALJ may delegate his or her duty to the claimant's counsel." *Sotososa v. Colvin*, No. 15-CV-854 (FPG), 2016 WL 6517788, at *4 (W.D.N.Y. Nov. 3, 2016); *see also Edwards v. Berryhill*, No. 3:17-CV-298 (JCH), 2018 WL 658833, at *12 (D. Conn. Jan. 31, 2018)("ALJs have a duty to develop the record even in cases where the claimant is represented by counsel and may not delegate her duty to develop the record to the claimant's attorney.").

Here, for the reasons discussed above, the need for further development of the record regarding the extent of impairment in Plaintiff's mental functioning was readily apparent and its absence prevents a fair adjudication of Plaintiff's application for benefits.

Despite the Court's conclusion that a remand is necessary the Court finds it *very* concerning that Plaintiff's counsel, having failed to fill this obvious gap in the record and/or alert the ALJ to the need for additional evidence (and having affirmatively advised the ALJ that he was not aware of any items missing from the record), now requests remand by arguing that the record is not complete. (Especially since this is not the first case decided by this Court involving this counsel with this fact pattern).

However despite counsel's failure to fill the gap in the record, "remand is required whenever further development of the record is necessary, even where (as here) the underdevelopment of the record is attributable, in part, to inaction by the claimant's counsel." *Martinez v. Saul*, No. 3:19-CV-01017-TOF, 2020 WL 6440950, at *12 (D. Conn. Nov. 3, 2020)(quoting *Vincent v. Astrue*, No. 08-CV-0956 (VEB), 2010 WL 10827101, at *8 (N.D.N.Y. Mar. 30, 2010)).

"Where, as here, it is apparent from the face of the record that the record lacks necessary information, the ALJ cannot be relieved of his

affirmative obligation to develop the record by a statement of counsel."

*Hilsdorf v. Comm'r of Soc. Sec.,* 724 F. Supp. 2d 330, 346 (E.D.N.Y. 2010).

### B. Physical Functioning

The record likewise contains numerous conflicting opinions regarding Plaintiff's physical functioning, but no assessment from a treating provider.

Dr. Daniel Schwartz performed a consultative examination in January of 2019; diagnosed hypertension, lower back pain, and reflux; assessed moderate to marked limitation as to heavy lifting and carrying; and opined that Plaintiff had mild limitation with respect to sitting, standing, climbing, pushing, and pulling. (T at 2015).

In December of 2019, Dr. Ann Marie Finegan performed a consultative examination.  She diagnosed rule out left shoulder biceps tendonitis; mild osteoarthritis of the knees; overweight; hypertension, poorly controlled; vertigo, and mood disorder. (T at 2037).  Dr. Finegan opined that Plaintiff should not perform any activities at unguarded heights or around dangerous or moving equipment. (T at 2037-38).  She believed Plaintiff was precluded from performing work tasks above desk height with her left arm and should not lift, push, pull, or carry more than 10 pounds with that arm. (T at 1038).  She also assessed mild limitation in Plaintiff's ability to kneel, crouch, crawl, or balance. (T at 2038).

Dr. Saundra Nickens performed a consultative examination in January of 2021.  She diagnosed back pain, left carpal tunnel syndrome, left shoulder internal derangement (post-surgery, with pain). (T at 904).  Dr. Nickens found it "difficult to determine the extent of [Plaintiff's] limitations of the left upper extremity due to her lack of cooperation [with] evaluation of the left shoulder." (T at 904).  She opined that Plaintiff had moderate to marked impairment with respect to pushing, pulling, lifting, and carrying objects. (T at 904).

In January of 2024, Dr. Susan Dantoni performed a consultative examination.  She diagnosed chronic back pain, depression, high blood pressure, arthritis, and carpal tunnel syndrome. (T at 2349).  Dr. Dantoni opined that Plaintiff might "experience schedule interruptions due to her chronic pain" and had mild to moderate limitation with respect to bending, lifting, and carrying. (T at 2349).

The record contains several assessments from non-examining State Agency review physicians.

In February of 2020, Dr. S. Putcha opined that Plaintiff can occasionally lift/carry 10 pounds and frequently lift/carry less than 10 pounds; stand/walk/sit for about 6 hours in an 8-hour workday; and should avoid even moderate exposure to hazards. (T at 138-142).

In October of 2020, Dr. S. Padmaraju concluded that Plaintiff could occasionally climb ramps and stairs; occasionally stoop; and frequently kneel, crouch, and crawl, but should avoid concentrated exposure to hazards. (T at 149-55).

In February of 2021, Dr. S. Ahmed opined that Plaintiff could sit, stand and/or walk for about 6 hours in an 8-hour workday; never climb ladders/ropes/scaffolds, but occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. Dr. Ahmed further found Plaintiff limited in her ability to reach left in front and/or laterally and overhead, with limited handling on her left side. (T at 85-96).  Dr. A. Periakaruppan affirmed Dr. Ahemd's findings in March of 2021.

As with the assessments of Plaintiff's mental functioning, the ALJ did not find any of these opinions fully persuasive.  (T at 2065-68).  Rather, the ALJ reconciled the assessments, conducted a lay analysis of the clinical findings, imaging studies, and Plaintiff's activities of daily living, and concluded that Plaintiff retained the RFC to perform a reduced range of light work. (T at 2061, 2070-72).

While this Court recognizes that it is the ALJ's responsibility to reconcile competing assessments and that the ALJ's determination need not track precisely any one medical opinion, given the extensive evidence

of pain and impairment and the undisputed fact that Plaintiff is significantly limited in her physical functioning, (and in light of the divergent views of the examining and reviewing physicians), it was error for the ALJ to render an RFC determination without seeking an assessment from a treating provider regarding Plaintiff's physical functioning.

### C. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).

Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

Thie Court recognizes that Plaintiff applied for benefits nearly five (5) years ago and she has appeared for two administrative hearings already.

However, "absent a finding that the claimant was actually disabled, delay alone is an insufficient basis on which to remand for benefits." *Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir.1996); *see also Gross v. McMahon*, 473

F. Supp. 2d 384, 386 (W.D.N.Y. 2007); *Batista v. Comm'r of Soc. Sec*., No. 3:19 CV 1660 (RMS), 2020 WL 6709096, at *5 (D. Conn. Nov. 16, 2020).

Moreover, "[r]emanding 'solely for the calculation of benefits is an extraordinary action and is proper only when further development of the record would serve no purpose.'" *Lynch v. O'Malley*, No. 22-CIV-5620-(CS)(AEK), 2024 WL 728483, at *7 (S.D.N.Y. Feb. 21, 2024)(quoting *Rivera v. Barnhart*, 423 F. Supp. 2d 271, 279 (S.D.N.Y. 2006)).

In a case where there is conflicting medical evidence, a remand for calculation of benefits is not appropriate, notwithstanding the appropriate frustration of the claimant (or, indeed, the court) with undue delay and/or repeated failures to follow applicable law and regulations. *See Newell v. Saul*, No. 19-cv-10831 (JLC), 2021 WL 608991, at *23 (S.D.N.Y. Feb. 7, 2021); *Lloyd v. Comm'r of Soc. Sec*., 335 F. Supp. 3d 472, 481 (W.D.N.Y. 2018).

However, it is also recommended that assignment to a different ALJ is ordered on remand. "[A] fresh look by another ALJ would be beneficial," given that this particular ALJ has already undertaken two unsuccessful attempts to conduct a proper analysis. *Collado v. Astrue*, No. 05-CV-3337 KMK/LMS, 2009 WL 2778664, at *3 (S.D.N.Y. Aug. 31, 2009)(citations

omitted); *see also McClaney v. Astrue*, No. 10-CV-5421 JG JO, 2012 WL 3777413, at *20 (E.D.N.Y. Aug. 10, 2012)(collecting cases).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 18) is GRANTED, and this case is remanded for further administrative proceedings consistent with this Decision and Order. The Clerk is directed to enter final judgment in favor of Plaintiff and then close the file.

Dated: October 13, 2025                    *s / Gary R. Jones*
                                           GARY R. JONES
                                           United States Magistrate Judge